Carol A. JACKLYN; Roger Jacklyn,
Plaintiffs–Appellants,

v.

**SCHERING–PLOUGH HEALTHCARE
PRODUCTS SALES CORPORATION,**
Defendant–Appellee.

No. 98–1335.

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1999.

Decided May 24, 1999.

Rehearing Denied June 30, 1999.

Connie S. McNealy (argued .and briefed), Powers, Chapman, DeAgostino, Meyers & Milia, Troy, MI, for Plaintiffs–Appellants.

Thomas M.J. Hathaway (argued and briefed), Brady Hathaway, Detroit, MI, for Defendant–Appellee.

Before: MERRITT, GUY, and DAUGHTREY, Circuit Judges.

## OPINION

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Carol A. Jacklyn, appeals from entry of summary judgment in favor of her former employer, Schering–Plough Healthcare Products Sales Corporation (Schering–Plough), with respect to her claims of sex discrimination and retaliation brought pursuant to Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws Ann. §§ 37.2202(1)(a) and 37.2701(a).[1] Plaintiff argues that the dis-

---

1. Plaintiff Roger Jacklyn, Carol's husband, also appeals the dismissal of his claim for loss of consortium. He concedes that his claim is entirely derivative of his wife's claim. Therefore, we refer to Carol Jacklyn as if she were the only plaintiff.

trict court erred in finding certain statements were inadmissible and, consequently, that she had not shown direct evidence of sex discrimination. Plaintiff also argues that it was error to find she had not produced circumstantial evidence sufficient to establish a *prima facie* case of either sex discrimination or retaliation for filing charges with the EEOC. After a review of the record and the arguments presented on appeal, we are convinced no error occurred and affirm.

## I.

Plaintiff began working for Schering-Plough in 1984 as a key account manager (KAM), marketing and selling its products to major retail accounts such as Meijer's, F & M Distributors, Perry Drugs, and Arbor Drugs. Plaintiff reported to Larry Grewe from 1984 until a reorganization in 1990. During that time, plaintiff received high evaluations and several performance-related awards. The early 1990s brought mergers and consolidations in the retail drug industry and changes at Schering-Plough as well. Defendant expected its KAMs to be more of a product category manager and an expert consultant to their accounts with more goal-setting and pre-planning emphasis. Plaintiff testified that the consolidations and loss of independent drugstores meant that the chains accounted for a larger share of sales, so each purchasing decision became more important.

Through the course of several reorganizations at Schering-Plough in the early 1990s, plaintiff's direct supervisor changed several times. Joseph Drake, a district manager, was her supervisor in 1990 and 1991, and again between early 1992 and July 1993. Reginald Lyons was plaintiff's district manager from July 1993 until he left the company in February 1994.

Plaintiff attributes the start of her problems to the arrival of Dean Erlandson as defendant's central regional manager.[2] In September 1992, plaintiff received an overall "very good" evaluation from Drake, with a "needs improvement" ranking for analytical skills.

In November 1992, plaintiff and Erlandson met and discussed both the issue of her increased work load and defendant's changing expectations for KAMs. Erlandson's memorandum of the meeting expressly indicated that those expectations included implementing a "team concept in selling" and sharing expertise with the central regional team, *i.e.,* assisting in the development and training of others. Erlandson clearly stated "[t]hese expectations are not optional. They are required to build our business, develop our personnel and allow our company to meet the changing demands of the business environment." Erlandson also expressed disappointment with what he perceived to be plaintiff's resistance to changes in her job responsibilities.

Drake reported to Erlandson in writing that his follow-up meeting with plaintiff in January 1993 had been "positive and productive." Drake echoed the changing job responsibilities and the need for team effort in both sales and training, and indicated that plaintiff agreed they would work together. Nonetheless, plaintiff also asked to discuss with Erlandson his comments about her "resistance to change" in his earlier memorandum. After Erlandson talked with plaintiff at the end of January, he prepared another memorandum setting forth the main issues discussed and noting that plaintiff said she was uncomfortable with his "edict" concerning the changing job responsibilities.

In May 1993, Drake wrote to plaintiff indicating disappointment that she had not involved him in "pitching" new products to F & M and Arbor Drugs and emphasizing the importance of the concept of team selling. Drake prepared a performance appraisal in June 1993, before being re-

---

**2.** Although plaintiff indicated that she reported directly to Erlandson when he started in the spring of 1992, Drake stated that he had already become plaintiff's direct supervisor before Erlandson's arrival.

placed by Reginald Lyons, which gave an overall evaluation of "good" with areas needing improvement. On January 13, 1994, about six months later, Lyons gave plaintiff an overall evaluation of "needs improvement" and specifically identified problems with her performance. On January 24, 1994, Erlandson presented a development plan, which he and Lyons had prepared, outlining actions to be taken by plaintiff and deadlines for their completion. Some of those dates were adjusted at plaintiff's request.

On January 20, plaintiff complained to Brian Bradley in human resources that she felt Erlandson had forced Drake and Lyons to raise issues about her performance because she was a woman. Bradley contacted Drake, Lyons, and Erlandson about the complaint and later advised plaintiff she should focus on improving her performance. In the meantime, plaintiff filed an EEOC charge on January 28, 1994, alleging that her performance was being scrutinized because of her sex and her age.[3]

Plaintiff complained that after she brought the EEOC charge, she was required to complete a work assignment from home while on approved medical leave. Specifically, plaintiff was working on a project with Mike Jones, director of trade relations, preparing for a presentation to F & M. On February 2, 1994, Jones requested additional information for an upcoming meeting with F & M. On that same day, plaintiff underwent out-patient surgery. The next day, Erlandson advised plaintiff of Jones' request and she worked all weekend completing her part of the presentation because it had to be at Jones' office the following Monday. Plaintiff also complained that she was denied reimbursement for computer expenses which previously had been approved. Plaintiff filed separate EEOC charges concerning

this alleged retaliation on March 25 and April 11, 1994.

In early April 1994, plaintiff was required to travel to Chicago to conduct price checks of products in stores, which she objected to as a duplication of someone else's work on accounts not belonging to her. Plaintiff returned home on April 5, completely distraught. On April 6, her psychologist, Dr. Barbara McIntyre, reported to defendant that plaintiff could not return to work and provided a diagnosis of Adjustment Disorder with mixed emotional features. Plaintiff was off work with full pay pending a decision on her workers' compensation claim. After five months, plaintiff's short-term disability benefits were reduced to 60 percent of her pay, she was provided the paperwork to apply for long-term disability benefits, and she was advised that her job protection would end after six months of disability leave. Plaintiff also was advised that if she was released to work after her job protection expired, defendant would look for a comparable position in her geographic area for one month, but if no position was found her employment would be terminated.[4]

In March 1995, almost a year after plaintiff took leave and about five months after her job protection had expired, plaintiff's position in Detroit was eliminated. Plaintiff was so advised at the end of March, when defendant rejected an expense report from plaintiff and asked that she return the company car and travel letter drafts. Plaintiff was released to work as of August 8, 1995, but defendant did not receive the release until October 3, 1995. Defendant advised plaintiff that no positions were open, but indicated that it would consider her for comparable positions for one month from the date her release was actually received. At the end of that time, a position as a KAM in the

---

3. Although plaintiff claimed she received disparate treatment based on her age, the claim for age discrimination was abandoned in response to the motion for summary judgment and is not at issue on appeal.

4. Plaintiff's workers' compensation claim was denied and when her short-term disability benefits ended in December 1994 she was placed on medical-no-pay status. Her long-term disability claim was denied in May 1995.

central region, based in Columbus, Ohio, became available and was offered to plaintiff. Plaintiff did not accept the position and her employment was terminated effective December 8, 1995, more than 18 months after she first went on leave.

Plaintiffs filed suit in state court, defendant removed the case to federal court, and after the close of discovery defendant filed a motion for summary judgment. The district court heard oral argument and granted defendant's motion with respect to all of the claims in a thorough written opinion. The court subsequently denied plaintiffs' motion for reconsideration. This appeal followed.

## II.

We review *de novo* the district court's grant of summary judgment. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). In accordance with Fed.R.Civ.P. 56(c), summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court must view the factual evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party, however, may not rest on its pleadings, but must come forward with evidence from which a rational trier of fact could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Sex Discrimination

 Plaintiff alleges she was subjected to disparate treatment because of her sex in an effort orchestrated by Erlandson to force her to resign or be terminated. Such a claim of intentional discrimination may be established by either proffering direct evidence of discrimination, or relying on circumstantial evidence to create an inference of discrimination. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995); *Harrison v.*

*Olde Fin. Corp.*, 225 Mich.App. 601, 572 N.W.2d 679 (1997). The district court concluded that plaintiff failed to create a genuine issue of material fact under either method because (1) her proffered direct evidence was inadmissible hearsay and (2) she failed to establish a *prima facie* case of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. Direct Evidence

 In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *See Talley*, 61 F.3d at 1248 (quoting *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114–5 (6th Cir.1987)); *Harrison*, 572 N.W.2d at 683. Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–5, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994); *Harrison*, 572 N.W.2d at 683–4.

On appeal, plaintiff argues that the district court erroneously excluded her direct evidence of discriminatory animus as inadmissible hearsay. Plaintiff specifically relies on the following statements from her own affidavit:

> Larry Grewe, my manager, from 1984 until 1990 approximately, advised me that he heard Dean Erlandson state that he did not want any "skirts" working for him.
>
> . . . . .
>
> I asked my District Manager, Joseph Drake, why I was having so much trouble with Dean Erlandson and what I could do to resolve the problems and he told me that I was the only woman

reporting to him and that I was not going to change that.

Joseph Drake further told me, when I asked for suggestions in how to change the hostile situation with Erlandson, in referring to male reports of Erlandson—"He's a man, he's a man, and he's a man. You're not going to change that."

Grewe stated by way of affidavit that he never heard Erlandson say he did not want "skirts" working for him and never told plaintiff he had heard such a comment. Likewise, Drake, who left defendant's employ in late 1995, denied in an affidavit that he made the alleged statements to plaintiff. Drake affirmatively stated that he never heard Erlandson make derogatory statements about women and that he was not pressured by Erlandson to treat plaintiff any differently with respect to the assessment of her performance. It is because of these denials that the alleged statements are proffered through plaintiff's affidavit and hearsay is an issue.

■ Hearsay evidence may not be considered on summary judgment. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994). While evidentiary questions are reviewed for abuse of discretion, the district court's conclusion that proffered evidence is hearsay under the Federal Rules of Evidence is a question of law which we review *de novo*. *See Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992).

■ First, with respect to the statement that Grewe told plaintiff that Erlandson said he did not want "skirts" working for him, the district court recognized that Erlandson's statement may not be hearsay since it is not offered for the truth of the matter asserted, but to show his state of mind. *See Talley,* 61 F.3d at 1249–50. Since Grewe has denied hearing the comment, plaintiff must testify that Grewe told her that he heard Erlandson make the "skirts" comment. Thus, Grewe's out-of-court statement also must be admissible. *See* FED.R.EVID. 805. As the district court

concluded, Grewe's statement was offered for the truth of the matter asserted, that is, that Erlandson made the "skirts" comment.

■ Plaintiff argues on appeal that Grewe's statement is not hearsay because it is an admission of a party opponent. Under Fed.R.Evid. 801(d)(2)(D), a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant *concerning a matter within the scope of the agency or employment,* made during the existence of the relationship" (emphasis added). In *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir. 1983), Baker, a subordinate of the plaintiff, testified that three other managers told him that the plaintiff was discharged because of his age. We held that the statements were hearsay because there was no evidence that the declarants were involved in the discharge decision and, therefore, no evidence that the statements were made concerning a matter within the scope of their agency or employment.

> The mere fact that each of these men was a "manager" within the expansive Spiegel organization is clearly insufficient to establish that matters bearing upon [plaintiff's] discharge were within the scope of their employment. Their statements to Baker concerning [plaintiff's] discharge cannot, on this record, be considered as vicarious admissions by Speigel.

*Hill,* 708 F.2d at 237. Similarly, in *Mitroff v. Xomox Corp.,* 797 F.2d 271 (6th Cir. 1986), the plaintiff and another witness testified that McAllister, an assistant personnel manager, told them there was a pattern of age discrimination by their employer. We held the testimony was admitted in error because there was no showing that the out-of-court statement of McAllister concerned a matter within the scope of his agency or employment.

In this case, Grewe was a district manager for defendant and was plaintiff's direct supervisor from 1984 until 1989. He was not, however, her direct supervisor at

any time after Erlandson became the regional manager in 1992, and was not involved in any of the critical appraisals of her performance that preceded her leaving work in April 1994. Plaintiff failed to show that Grewe's statement concerned matter within the scope of his agency or employment.

■ Next, plaintiff relies on the alleged out-of-court statements by Drake to suggest that Drake thought Erlandson was critical of her because she was a woman. Since Drake denies either making the statements or having that opinion, plaintiff must establish that his alleged statements to *her* were admissible. Plaintiff again relies on Fed.R.Evid. 801(d)(2)(D). Plaintiff claims Drake made the statements during the time that he was her district manager, which was from early 1992 until July 1993. Thus, Drake was involved in supervising plaintiff and evaluating her performance after Erlandson set out the changing expectations for plaintiff. Defendant argues, however, that because Drake was not involved in the actions that plaintiff claims led to her constructive discharge his statements did not concern matters within the scope of his agency or employment. We agree. There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer. The test is whether the statement *concerns* a matter within the scope of the agency or employment. *Cf. Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir.1999) (out-of-court declarant's statement is not hearsay under 801(d)(2)(D) where he was considered and used as an agent of the defendant to convey a message to the witness).

■ Moreover, even if the alleged statements of Drake were not hearsay, they are inadmissible opinions of a lay witness. When a witness is not an expert, his "testimony in the form of opinions or inferences is limited to those opinions and inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." FED.R.EVID. 701. Plaintiff failed to demonstrate that the opinion or inference was rationally based on Drake's perception or that it would be helpful either to an understanding of Drake's testimony or to the determination of a fact in issue. *Cf. Mitroff,* 797 F.2d at 276 (declarant's out-of-court opinion that there was a pattern of age discrimination inadmissible under Rule 701).

■ Additionally, even if plaintiff could introduce Drake's alleged statements, such statements would not constitute direct evidence of discrimination. Rather, the statements imply that Drake was of the opinion that Erlandson's criticisms of plaintiff had to do with her being the only woman KAM under his direction. That opinion, if believed, does not require the conclusion that her sex was in fact a motivating factor for her negative appraisals, the development plan, or the other actions that plaintiff alleges ultimately led to her discharge.

We conclude that the district court did not err in excluding the out-of-court statements of Grewe and Drake. While plaintiff could have relied on the "skirts" comment if Grewe was willing to testify that he heard Erlandson say it, it is not admissible through the affidavit or testimony of plaintiff. Without that statement, there can be no doubt that plaintiff has failed to establish credible direct evidence of discriminatory animus.

**2. Circumstantial Evidence**

Plaintiff claims that she established a *prima facie* case of sex discrimination under *McDonnell Douglas* by showing that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male employees for the same or similar conduct. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–3 (6th Cir.1992). The district court assumed without deciding that there was a question of fact whether plaintiff was constructively dis-

charged, but found that she failed to show either that she was qualified or that she was treated differently than similarly-situated male employees.[5]

■ To show that she was qualified at the time of her alleged constructive discharge, plaintiff must show that she was performing at a level which met defendant's legitimate expectations. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990) (quoting *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). Plaintiff emphasizes that she performed well as a KAM for many years and continued to have good sales performance. Also, a former buyer for F & M attested that plaintiff often worked with F & M's top executives, had a thorough understanding of its objectives and strategies, and was competent, professional, and hard working. Nonetheless, defendant expressly identified mandatory changes in how it wanted plaintiff to do the job, which were related to consolidations in the retail drug industry. We will not second guess defendant's business judgment that different sales methods needed to be employed to address those changes. *See McDonald*, 898 F.2d at 1160. Although defendant did not terminate plaintiff's employment for these deficiencies, she received a "needs improvement" evaluation and was required to complete the development plan to address deficiencies in her analytical and team sales skills. Plaintiff took leave before defendant determined whether she was making improvement. The district court correctly found that plaintiff failed to come forward with evidence to show either that she was meeting the defendant's expectations at the time she took leave, or that the expectations were not legitimate.

■ Plaintiff reasserts her claim that she was treated differently than similarly-situated male employees. In determining whether an allegedly comparable employee is similarly situated to the plaintiff, the question is whether "all of the *relevant* aspects of his employment situation were 'nearly identical' to those of the [male employee's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (emphasis in original)). Plaintiff broadly asserts that Kent Schmid, a male KAM, who also reported to Erlandson, was not (1) subjected to the same demands; (2) given three performance reviews in 15 months; (3) placed on probation; or (4) required to complete a development plan. As the district court found, there is no evidence from which a reasonable juror could conclude Schmid was similarly situated to plaintiff in all relevant aspects of their employment situations.

■ Finally, from a review of the record in this case, we also find that even if plaintiff could establish a *prima facie* case her bare assertion that defendant "raised the performance bar" for her alone is insufficient to create an genuine issue of fact on the question of whether the performance appraisals and work demands were merely pretext for discrimination based on sex.

## B. Retaliation

■ Plaintiff relies on circumstantial evidence to infer that defendant retaliated against her for filing an EEOC charge that alleged discrimination in the terms and conditions of her employment. To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action, *e.g.*, that it was a significant factor. *See Johnson v. Department of H.H.S.*, 30 F.3d 45, 47 (6th Cir.1994).

5. Plaintiff was not discharged because of poor performance, but took extended leave. Defendant nonetheless offered her a comparable KAM position when she was released to work.

We express no opinion whether the record is sufficient to create a question of fact on this issue.

As the district court found, neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions. *See Kocsis v. Multi–Care. Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996).

█ On appeal, plaintiff asserts that her position was eliminated and she was ultimately terminated in retaliation for filing the EEOC charge. There is, however, no evidence which would create a causal link between the protected activity (filing the EEOC charges in 1994) and either the elimination of her position after she had been on leave for almost a year, or her termination when she declined the KAM position after she had been on leave about eighteen months.

**AFFIRMED.**