**WEST TENNESSEE CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., and Zellner Construction Company, Inc., Plaintiffs,**

v.

**CITY OF MEMPHIS, Defendant.**

No. 99–2001.

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 13, 2004.

Steven W. Dills, Esq., Stephen L. Shields, Esq., Jackson, Shields, Yeiser, Holt, Speakman & Lucas, Ralph D. Golden, Esq., Golden Law Firm, Linda Jew Mathis, Esq., Golden & Mathis, Memphis, TN, Robert J. Proctor, Esq., Bradley A. Hutchins, Esq., Proctor, Felton & Chambers, Atlanta, GA, for Plaintiffs.

Felicia Izzard Corbin, Monika Lorice Johnson, City Attorneys Office, Robert L.J. Spence, Jr., Esq., Spence Law Firm, PLLC, Memphis, TN, for Defendant.

### ORDER DENYING PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

DONALD, District Court.

This matter is before the Court on the cross-motions for summary judgment of the West Tennessee Chapter of Associated Builders and Contractors, Inc. and Zellner Construction Company, Inc. (collectively "Plaintiffs") and of the City of Memphis ("Defendant" or "City"). The City's Minority and Women Business Enterprise ("MWBE") program establishes participation goals for minority-owned and female-owned businesses. Plaintiffs contend that there is no evidence of discrimination that would support the ordinance instituting the MWBE program. The City counters that there is undisputed evidence of discrimination. The Court has jurisdiction under 28 U.S.C. § 1331. For the reasons stated herein, the Court **DENIES** both motions.

### I. Background

The City of Memphis ("City") and other public entities commissioned a study to examine whether racial disparities existed in the procurement of contracts, including those for City construction projects. The disparity study, conducted by D.J. Miller & Associates, Inc., found that City agencies had actively discriminated against MWBEs in the past, perpetuated the effects of that past discrimination, and passively participated in present day prime contractor discrimination against MWBEs as to construction procurement. The study was presented to the City Council in 1994.

Based on the disparity study, the City Council passed Ordinance No. 4388 in 1996, to address alleged passive and active discrimination in its procurement of construction contracts. The plan requires a percentage of the amount spent on City contracts to be set aside for MWBEs.[1] If non-MWBEs bidding for City contracts do not meet those participation goals, their bids may be declared non-responsive. Un-

---

1. For the purposes of the MWBE plan, an MWBE is an independent concern which is at least 51% owned, operated, and controlled by an African–American or a woman.

der some circumstances, however, a non-MWBE may obtain a waiver from the program's requirements.

Plaintiff West Tennessee Chapter of Associated Builders and Contractors is an organization whose members are businesses engaged in construction in West Tennessee. Its organizational purpose is to protect the practice of awarding contracts based on bid price and oppose measures such as Memphis' MWBE program. Plaintiff Zellner Construction Company is a non-MWBE contractor who was rejected from a City contract for failing to meet the minority participation goal.

Plaintiffs filed suit on January 4, 1999, challenging the MWBE program's constitutionality. They argued that under the Equal Protection Clause, the City must have a compelling interest to legislate on the basis of racial classifications. According to Plaintiffs, the City's disparity study does not meet the evidentiary standards required to show a compelling interest.

In 2001, Ordinance No. 4388's sunset provision took effect, and the City extended the MWBE program for another five years, to conclude officially in 2006.

After considerable discovery, the parties filed motions in limine and cross-motions for summary judgment. On January 28 and February 5, 2004, the Court denied the motions in limine. The Court now considers both motions for summary judgment.

## II. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a show-ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2727, at 35 (2d ed.1998).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible or usable at trial. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2721, at 40 (2d ed.1998). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Util. Bd.*, 259

F.3d 452, 460 (6th Cir.2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River*, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

### III. Analysis

#### A. Plaintiffs' Motion

The Fourteenth Amendment to the United States Constitution guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is now settled that "all laws that classify citizens on the basis of race [are] constitutionally suspect." *Shaw v. Hunt*, 517 U.S. 899, 904, 116 S.Ct. 1894, 135 L.Ed.2d 207 (1996). While such classifications are not illegal per se, they nevertheless are subjected to the most exacting legal scrutiny possible. "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). That is, the government classification must be narrowly tailored to achieve a compelling government interest. *City of Richmond v. J.A.*

*Croson Co.*, 488 U.S. 469, 493–95, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

In *Croson*, a plurality of the Supreme Court concluded that state and local governments have a compelling interest in remedying identified past and present race discrimination within their borders. *Id.* at 492, 109 S.Ct. 706. The plurality explained that the Fourteenth Amendment permits race-conscious programs that seek both to eradicate discrimination by the governmental entity itself, and to prevent the public entity from acting as a " 'passive participant' in a system of racial exclusion practiced by elements of the local construction industry" by allowing tax dollars "to finance the evil of private prejudice." *Id.* Thus, *Croson* makes clear that the City has a compelling interest in eradicating and remedying private discrimination in the issuance of City construction contracts.

Stating that Richmond had failed to prove a compelling interest, the *Croson* Court focused on the lack of a "strong basis in evidence for the conclusion that remedial action was necessary." *Id.* at 500, 109 S.Ct. 706 (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (plurality opinion)). Similarly, in *Long v. City of Saginaw*, 911 F.2d 1192, 1196 (6th Cir. 1990), the Sixth Circuit used the same "strong basis in evidence" language to determine whether a compelling governmental interest existed for an affirmative action program designed to increase the number of black officers in the Saginaw Police Department. *See also United Black Firefighters Ass'n v. City of Akron*, 976 F.2d 999, 1009–10 (6th Cir.1992) ("[W]e conclude that the 'strong basis in evidence' test, also referred to by this Court as the 'convincing evidence' test, is the proper measure for determining whether a state actor has adequately dem-

onstrated *Croson's* past intentional discrimination requirement.").

Plaintiffs argue that they are entitled to summary judgment because Defendant has not met the burden of showing a "strong basis in evidence" that a compelling interest exists. Plaintiffs contend that the disparity study is "fatally flawed" because the methodology for determining ready, willing, and able contractors is unsound, important data about the number of contractors and bids were missing from the study, and various calculations were incorrect. (*See* Pls.' Mem. in Supp. of Mot. for Summ. J.) The prevailing standard requires Defendant, as the non-moving party, to proffer specific facts in opposition to a motion for summary judgment. It does not require the City to prove its case prior to trial.

█ Defendant has produced a study which concludes that the City discriminated in the award of construction contracts. An enormous amount of data was analyzed and organized into the final disparity study, including data about the non-WMBE and WMBE contractors in the City. In producing the study, Defendant introduces evidence which raises the inference of discriminatory exclusion in the local construction industry and links its public spending to that discrimination. "It is beyond dispute that any public entity, state or federal, has a compelling interest in assuring that public dollars, drawn from the tax contributions of all citizens, do not serve to finance the evil of private prejudice." *See Croson*, 488 U.S. at 492, 109 S.Ct. 706 (plurality opinion). Accordingly, the Court finds that the City has met its burden of production opposition to Plaintiffs' motion for summary judgment by using the City-commissioned disparity study to demonstrate the existence of a genuine issue of fact. The disparity study indicates that discrimination was persistent in the local construction industry; the

City may prove at trial that it was an indirect participant in that discrimination.

Plaintiffs also argue that the Ordinance is not narrowly tailored to the means of addressing the discrimination. Narrow tailoring is imperative when a government pursues a compelling interest which triggers strict scrutiny analysis. *See Associated Gen. Contractors v. Drabik*, 214 F.3d 730, 732 (6th Cir.2000). Plaintiffs argue that the extension of the Ordinance past its original sunset position signals that the Ordinance is not narrowly tailored. Remedial measures, by definition, should not exist eternally because they should end when the past discrimination is resolved. Upon rectification of the past discrimination, a remedial measure's compelling interest evaporates, and with it the license to use a racial classification. The City Council acted responsibly when it set a sunset provision. With evidence that vestiges of the past discrimination remained, the City Council might have acted within its power to extend the Ordinance. The extension of the MWBE program alone is not grounds for the Court, on summary judgment, to find that the Ordinance is not narrowly tailored. Accordingly, the Court finds that Defendant has shown that genuine issues of material fact exist as to whether the Ordinance is narrowly tailored.

Taking the facts in the light most favorable to the non-moving Defendant, the Court finds that a genuine issue of material fact remains as to Plaintiffs' claim for equal protection violation. The Court denies Plaintiffs' motion for summary judgment.

## B. Defendant's Motion

█ Defendant argues that it is entitled to summary judgment because Plaintiffs have produced nothing to rebut their evidence of past discrimination. In a case such as this, the party opposing the use of

a remedial race classification must introduce credible, particularized evidence to rebut the City's initial showing of the existence of a compelling interest. *See Wygant,* 476 U.S. at 293, 106 S.Ct. 1842 ("In 'reverse discrimination' suits, as in any other suit, it is the plaintiffs who must bear the burden of demonstrating that their rights have been violated.") "[R]ebuttal evidence may consist of a neutral explanation for the statistical disparities." *Coral Constr. Co. v. King County,* 941 F.2d 910, 921 (9th Cir.1991). Plaintiffs might rebut the disparity study "by (1) showing that the statistics are flawed; (2) demonstrating that the disparities shown by the statistics are not significant or actionable; or (3) presenting contrasting statistical data." *Id.; see also Eng'g Contractors Ass'n v. Metro. Dade County,* 122 F.3d 895, 916 (11th Cir.1997) (same); *Contractors Ass'n v. City of Phila.,* 6 F.3d 990, 1007 (3d Cir.1993) (same).

█ Plaintiffs have produced arguments, and a supporting expert report, detailing missing data, incorrect calculations, and improper methodology in the disparity study. (*See* Order Den. Def.'s Mot. for Disqualification & Mot. in Limine (discussing the expert report and its relevancy to the instant case in detail).) Plaintiffs clearly plan to attempt to rebut the disparity study at trial. Defendant's argument that Plaintiffs must conduct their own study is without merit. Plaintiffs have shown that they might be able successfully to rebut Defendant's compelling interest evidence at trial. Therefore, taking the facts in the light most favorable to the non-moving Plaintiffs, the Court finds that a genuine issue of material fact remains as to Plaintiffs' equal protection claim.

## IV. Conclusion

As genuine issues of material fact exist, the Court **DENIES** both Plaintiffs' and Defendant's motions for summary judgment.