KAREN NELSON MOORE, Circuit Judge,
dissenting.
I believe that had the district court considered the Sharrer affidavit, which alleges that Roesch received only a five-day suspension in exchange for his promise to place upon Conley the blame for the spill, Conley would have established pretext. Under these circumstances, I respectfully disagree with my colleagues and dissent.
Because I believe that the majority is too quick to conclude that Conley would have failed to establish pretext on the part of the City of Findlay, it cannot suffice simply to assume without deciding that the Sharrer affidavit should have been considered; we must address the admissibility of the affidavit. Our case law is quite clear that the district court should have considered the Sharrer affidavit, as it was not inadmissible hearsay. The parts of Sharrer’s affidavit detailing Roesch’s allegations are admissible under Federal Rule of Evidence 801(d)(2) as an admission by a party-opponent. The rule states that a statement is not hearsay if “[t]he statement is offered against a party and is ... a statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.” Fed.R.Evid. 801(d)(2)(D). Sharrer’s affidavit regarding Roesch’s statements fits that description.
The person whose employment must meet the constricts of Rule 801(d)(2)(D) is Roesch, not Sharrer. For instance, in Gold v. FedEx Freight East, Inc. (In re Rodriguez), 487 F.3d 1001 (6th Cir.2007), we looked at the employment status of the out-of-court declarant to determine whether the out-of court declarant, not the one who made out the affidavit, made the statements during the course of his employment. See id. at 1008 (“FedEx is incorrect, at least with regard to the McKibbon and Williams affidavits, which are admissible non-hearsay. Adkinson’s statements concerning Rodriguez’s accent and speech pattern, as recounted in those affidavits, were allegedly made during Adkinson’s employment with FedEx, to a lower-level supervisor who otherwise would have promoted Rodriguez, and in response to a direct inquiry from another manager regarding the reason for Adkinson’s refusal to promote Rodriguez. It is clear, therefore, that Adkinson made the *411 alleged statements during the course and in the scope of his employment with FedEx.”). In other cases we have applied Rule 801(d)(2)(D) in the same manner. See, e.g., Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 928 (6th Cir.1999) (focusing on the employment status of the out-of-court declarant, but concluding for other reasons that the statements did not qualify as non-hearsay under Fed.R.Evid. 801(d)(2)(D)); Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1081 (6th Cir.1999) (focusing on the employment status of the declarants whom the plaintiffs witness quoted, not the employment status of the plaintiffs witness).
In considering whether Roesch qualifies under Rule 801(d)(2)(D), I note that it is undisputed that Roesch was an employee at the time he made the statement to Sharrer; therefore, the remaining question is whether the statement was made within the scope of Roesch’s employment. We have one opinion that defines “scope of employment” in a seemingly narrow manner, stating that “[t]here is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer.” Jacklyn, 176 F.3d at 928. Our application of that standard, however, was not so narrow; we looked at the authority the declarant had over the matter he was addressing and concluded that because the declarant “was not involved in the actions that plaintiff claims led to her constructive discharge^] his statements did not concern matters within the scope of his agency or employment.” Id. Therefore, Jacklyn is consistent with our precedents that consider the authority of the declarant. See, e.g., Blair v. Henry Filters, Inc., 505 F.3d 517, 528 (6th Cir.2007) (concluding “that the preponderance of evidence indicates that Tsolis[, the declarant,] had the authority to hire and fire salespeople, and therfore, Tsolis’s ‘younger sales force’ statement concerned a matter within the scope of his employment”); Johnson v. Kroger Co., 319 F.3d 858, 868 (6th Cir.2003) (“Although remarks made by an individual who has no authority over the challenged employment action are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant.”); Liadis v. Sears, Roebuck & Co., 47 Fed. Appx. 295, 303 (6th Cir.2002) (unpublished) (“Statements by employees are outside of the scope of an employee’s employment, and therefore not subject to the party-admission rule, when they concern decisionmaking processes into which the employee has no input, or decisions to which they were not a party.”); Moore, 171 F.3d at 1081 (concluding that statements were non-hearsay because one was made by an employee in a supervisory capacity and the other was made at the direction of the supervisor, thus giving the declarant agent status).
I must conclude that Roesch, as operator and supervisor of the assistant operators, was in a position both to supervise Conley’s work and to critique her performance. See J.A. at 236-244. Therefore, if Roesch admitted that he lied in Conley’s performance evaluations at the request of his superiors, that would be a statement within the scope of his employment. For that reason, the Sharrer affidavit should qualify as non-hearsay under Rule 801(d)(2)(D).
If the district court should have considered Sharrer’s affidavit, and I believe it should have, then the final question we must address is whether the affidavit would have satisfied Conley’s obligation to demonstrate pretext and rebut the city’s explanation for why it fired her. Although this is a close question, I believe that the *412 affidavit does establish pretext. Because Conley appeals the district court’s grant of summary judgment, we must view the affidavit in the light most favorable to Conley, the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, any inferences that can be drawn from the Sharrer affidavit must be viewed in the light most favorable to Conley. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Judged in that light, we must reverse the grant of summary judgment if the affidavit provides evidence from which “a reasonable jury could conclude that the preferred reason is actually a pretext for unlawful discrimination.” Blair, 505 F.3d at 524.
One of the ways that a plaintiff may demonstrate pretext is by showing that the preferred reason “did not actually motivate the defendant’s challenged conduct.” Id. at 532. If we take Sharrer’s affidavit in the light most favorable to Conley, a reasonable jury could certainly conclude that the City of Findlay’s preferred reason for firing her was pretextual. What the affidavit shows was that Conley was specifically targeted by her employers, who wanted to remove her so badly that they were willing to lie in order to stack the deck against her. The city’s claims that it fired her for incompetence might very well ring hollow for a jury that believes that the city acted with animus against the only woman working at the Water Pollution Control Plant. In other words, if the City of Findlay truly believed that Conley was incompetent, directing employees to falsify her performance reviews would be unnecessary; in contrast, the falsification of her performance review “casts further doubt on the legitimacy of [the City of Findlay’s] stated reason.” Clay v. United Parcel Serv., Inc., 501 F.3d 695, 713 (6th Cir.2007). Thus, the Sharrer affidavit established pretext and summary judgment was inappropriate.
Given Conley’s apparent role in the largest spill in the history of the City of Find-lay, I am certainly skeptical of her chances of success at trial. My own skepticism, however, is not cause for ignoring the fact that she has rebutted the city’s assertions and demonstrated pretext. The decision should properly be left to a jury, not judges, to assess the evidence and decide whether Conley was in fact the victim of discrimination. Under these circumstances, I think that we should reverse the district court’s grant of summary judgment, and for that reason, I respectfully dissent.