**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**RALPH JONES SHEET METAL, INC., Defendant.**

No. 09–2636.

United States District Court, W.D. Tennessee, Western Division.

April 12, 2011.

Anica Conner, Carson L. Owen, Faye A. Williams, Celia S. Liner, Deidre Smith, Matthew H. McCoy, Equal Employment Opportunity Commission, Memphis, TN, for Plaintiff.

Jeff Weintraub, Carrie L. Kinsella, Weintraub Stock & Grisham, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Defendant's motion for summary judgment on Plaintiff's Title VII claim alleging racial discrimination, hostile work environment, and its claim for damages pursuant to 42 U.S.C. § 1981(a). (D.E. # 33.) Defendant argues that it is entitled to judgment as a matter of law as there is no dispute as to any genuine issue of fact. Fed.R.Civ.P. 56. Defendant avers that it is entitled to judgment as a matter of law because 1) the employee, Kenny Rainey ("Rainey"), who uttered racial epithets, was not a supervisor; 2) that the racial slurs were not sufficiently severe or pervasive; and 3) that plaintiffs did not invoke the complaint mechanism in the union collective bargaining agreement. For the reasons set forth herein, the Court finds that there are disputed material facts which preclude summary judgment.

### I. Background Factual Summary

The EEOC filed the instant Title VII racial harassment complaint on behalf of certain African–American employees who worked in various non-management capacities as classified employees for Defendant Employer. Most of the complaints center around long term employee and foreperson, Rainey. Rainey has been at the company since shortly after its inception, and prior to that time worked under Ralph Jones ("Jones"), the founder, at another company. Defendant's statement of undis-

puted facts details sporadic incidents of the word "nigger" being used in the workplace, but avers that when the incidents were reported, Defendant took prompt action. Defendant notes that Plaintiff Henson was discharged for striking Rainey with a two-by-four. Plaintiff alleges that the violence was provoked by Rainey's use of the ("N-word"). Defendant acknowledges that Henson allegedly reported the use of this epithet on at least three occasions to Jones, President of the Company, and Dale Lloyd, Field Project Manager, who reported directly to Jones. According to Defendant, Jones and/or Lloyd addressed the reports appropriately, and neither Jones nor Lloyd ever saw the racial epithet graffiti on the bathroom walls or the fork lift.

In response, Plaintiff paints a much more pervasive, demeaning, and humiliating picture. Plaintiff contends that Rainey, who had the title foreman, was the de facto supervisor at the subject plant. Plaintiff avers that Rainey had the responsibility for managing and overseeing the shop area, overseeing jobs in the field, providing assignments and instructions to classified workers, and disciplining classified workers for tardiness and absenteeism. Plaintiff further avers that Rainey influenced hiring and firing. Plaintiff avers and states that Rainey "favored Caucasian classified workers and was far less stringent in [imposing discipline]" as to Caucasian employees. Plaintiff contends that Rainey has a philosophy that "niggers should get the hard work."

Plaintiff set forth a litany of racial slurs and intimidating actions attributed to Rainey and others. Rainey was allegedly observed visibly wearing a gun on a regular basis, making specified racial threats, and provoking racial violence. Plaintiff describes an atmosphere that was racially offensive, demeaning, and oppressive.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright *et al., Federal Practice and Procedure* § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348.

### III. Analysis

Title VII of the Civil Rights Act of 1964 provides in pertinent part:

It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). Section 1981 states in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same rights in every state ... to make and enforce contracts, ... and to the full and equal benefit of all the laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

 Title VII creates a cause of action based on a [racially] hostile work environment when the workplace is so permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently pervasive to alter the conditions of the worker's employment. *Harris v. Forklift*

*Sys. Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To establish a hostile work environment claim, Plaintiff must show 1) membership in a protected class; 2) unwelcome harassment based on race; 3) the harassment was sufficiently severe or pervasive, and 4) that the harassment altered the conditions of the work place.

 It is undisputed that the African-American employees on whose behalf the EEOC brings this action are members of a protected class. Moreover, while several employees in the protected class purportedly heard the racial slurs and were not bothered, or engaged in reciprocal slurs, the quantum of proof clearly demonstrates that these racial slurs were unwelcome by several employees. Whether words or conduct were unwelcome generally present questions of fact as they turn on witness credibility. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473 (7th Cir.2004). These disputed facts create an issue for the fact finder.

 Next, the conduct has to be sufficiently severe or pervasive to alter the working conditions. The Court must evaluate the totality of the facts in light of all the circumstances. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *see also Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.1999). The court must examine case-specific circumstances in their totality and evaluate the severity, frequency, and the degree of abuse. *Id.* Central to the inquiry are factors such as the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it interfered with an employee's work performance. *Id.*

 Plaintiff has demonstrated a genuine issue of fact by producing direct evidence that foreman Rainey used the word

"nigger" on numerous occasions, and directed its use at particular employees with a view to demeaning, insulting, and degrading them. Witness Henson stated that Rainey used the word "nigger" which provoked Henson to strike Rainey, resulting in Henson losing his job. As courts have held, "Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African–Americans." "Perhaps no single act can more quickly create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger.' " *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (quoting *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993)); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). "Indeed, it is difficult to imagine a message more calculated to make an African–American feel unwelcome in the workplace than [the word] 'nigger' engraved in his or her individual workspace." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 2008 WL 8085719 (10th Cir.2008) (citing *Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1047 (7th Cir.2002)).

■ Defendant has set forth isolated incidents of racial slurs. Viewed in isolation, a slur arguably does not amount to a pervasive racialized atmosphere. However, the workplace is not measured by a snapshot in time on a particular day, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), but must be aggregated and viewed in light of the cumulative effect of such individual and separate acts. *Id.; see also Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir.1999).

Plaintiff has presented sufficient evidence from which a rational jury could find for Plaintiff on this element thus precluding summary judgment.

■ Finally, Plaintiff has produced direct evidence which if believed by the fact finder shows that racial slurs provoked Henson to strike Rainey resulting in Henson losing his job; that racial slurs resulted in Kevin Swannigan terminating his employment after just one day; that racial slurs and complaints of racial slurs resulted in African–American employees being disciplined. Finally, Plaintiff has presented direct evidence of racial graffiti in the rest room and etched on the fork lift. Several employees reported the incidents to management who took no action. Defendant argues that Rainey was not a supervisor. While Rainey may have had the job title of foreman, and may have been a union member, he exercised supervisory authority, imposed discipline, and influenced hiring and firing at the company. All of the evidence adduced by Plaintiff clearly establishes that Rainey had actual and apparent supervisory authority. The management determination is not confined to labels but rather must be assessed in light of functions. Here Rainey clearly functioned as a supervisor. His actions are therefore attributable to Defendant.

■ Further, based on the record, as a result of Rainey's example of pervasive racial slurs and insults, other coworkers used racial slurs and insults. Thus, a genuine issue of fact is created as to coworker racial harassment.

■ There is no evidence that Defendant had an anti-harassment policy which was publicized. There was no complaint mechanism in place, beyond the union grievance process for such conduct to be reported. Further there is no evidence of training on anti-harassment by the company. Defendant is not entitled to the *Faragher* defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Based on the foregoing, the Courts finds that genuine issues of fact exist which makes summary judgment inappropriate.

Accordingly, Defendant's motion is DENIED as to Plaintiff's racial harassment claim. Finally, the Court will defer a decision on the issue of punitive damages to see if the proof at trial meets the standard for punitive damages.