**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0258n.06

**No. 10-2512**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DIANNE KEAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| IT-WORKS, INC., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| HC5, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

FILED
*Mar 07, 2012*
LEONARD GREEN, Clerk

Before: MARTIN, SUTTON and BALDOCK, Circuit Judges.[*]

SUTTON, Circuit Judge. After Dianne Kean was fired from her job as a massage therapist, she sued her employers under Title VII and Michigan law, alleging that a colleague's sexual comments had created a hostile work environment and that she was fired in retaliation for complaining about it. The district court granted summary judgment to her employers because Kean failed to show a hostile work environment or retaliation. We affirm.

---

[*]The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

No. 10-2512
*Kean v. It-Works, Inc., et al.*

I.

Dianne Kean began working as a massage therapist at IT-Works in 2005. In January 2007, her supervisor, Kathy Emmett, gave Kean a "good" evaluation (averaging between two and three on a scale of one to five), but noted that she needed to "reduce [her] negativity" and increase her listening skills. R. 38-5 at 3.

In August or September of that year, another therapist, Dave Roer, began working in the office. Roer told explicit sexual jokes around customers and the other therapists, prompting Kean to complain to Emmett. In October, after Roer's crude comments continued, Kean and several other female employees met with Emmett and one of IT-Works's owners, Margaret Kammerer, to complain about Roer. In a meeting about her November performance review, Kean told Emmett that if IT-Works did not do something about Roer's conduct, she would file a civil rights complaint.

In response to these concerns, Margaret Kammerer and her husband, James Kammerer, each spoke separately with Roer, telling him to "knock it off and . . . keep it professional." R. 38-10 at 6; R. 38-8 at 4. After they told him to stop, neither of the Kammerers heard any more complaints about Roer.

Kean's November performance evaluation, meanwhile, went well. Emmett gave her a "very good" rating, and noted that she "conducts herself w[ith] a cheerful/positive manner." R. 45-7 at 3. She also gave Kean a 7% merit-based pay raise.

By January 2008, however, things had soured. Emmett told Kean that the Kammerers were having financial difficulties that might jeopardize the company's ability to pay bonuses or make payroll. Kean also received an invoice for overdue rent for the company's building, which the landlord asked her to deliver to the Kammerers. Kean told another massage therapist about IT-Works' financial problems. On January 21, James Kammerer fired Kean due to her gossiping about IT-Works's financial situation, as well as "eye rolling at the supervisor," "showing very poor judgment and lousy appreciation for the job." R. 42-6 at 12.

Kean sued IT-Works as well as HC-5, the organization that processed her paychecks. She alleged that Roer's offensive comments had created a hostile work environment in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act, and that IT-Works fired her in retaliation for complaining about his conduct, also in violation of the two statutes. The district court granted summary judgment to both defendants. It held that HC-5 had no notice of the alleged harassment, that Kean's inability to recall any of Roer's specific comments made it impossible for her to prove a hostile work environment, and that she had not introduced sufficient evidence to show that her complaints motivated IT-Works's decision to fire her.

## II.

*Hostile Work Environment.* To hold an employer liable for sexual harassment caused by a coworker, a plaintiff must show that: (1) she was a member of a protected group; (2) unwelcome harassment occurred; (3) the harassment was based on sex; (4) the harassment "unreasonably

interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive"; and (5) "the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir. 1999).

Kean cannot meet at least two of these requirements. First, she cannot remember anything about Roer's comments other than that they "refer[red] to women's breasts and women's genitalia," as well as Roer's three ex-wives. *See* R. 51-2 at 23–26. Even if we infer that Roer's comments were crude and unprofessional, as is appropriate at this stage of the litigation, that does not suffice to take the claim to a jury. Without more specificity about the nature of the comments, a jury could not determine that Roer's harassment "created a hostile or offensive work environment that was severe and pervasive." *Fenton*, 174 F.3d at 830.

Kean, for example, does not say that Roer directed any of his comments toward her, which itself weighs against a hostile work environment finding. *See Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997). She does not say that the harassment interfered with her work performance. To the contrary, her performance evaluations improved from January 2007 (when Roer was not working at IT-Works) to November 2007 (when she made her final complaint about his comments). She does not say how frequently Roer made his comments, which would make it impossible for the jury to determine whether they were "pervasive." And without a more specific description of the comments, the jury could not determine whether the words went beyond the "merely offensive" and vulgar (which do not give rise to liability) to something so "severe or

pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *see Zaring Homes*, 104 F.3d at 826 ("Although the verbal comments were offensive and inappropriate, and . . . defendant's employees did not always conduct themselves in a professional manner, Title VII was not designed to purge the workplace of vulgarity").

Even if Kean could satisfy the severity and pervasiveness requirements, she faces an additional barrier. Because she sued her employers, not Roer, she must show that IT-Works and HC-5 were themselves culpable—that their "response manifest[ed] indifference or unreasonableness in light of the facts the employer[s] knew or should have known." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (citation and internal quotation marks omitted). No such conclusion could be made on this record. Management took Kean's complaints seriously. Both owners separately told Roer to stop the inappropriate comments. And the owners testified without contradiction that no one complained again about Roer, even when they asked employees several times whether the problem had resurfaced.

Kean's state-law claim fares no better. As under federal law, so under Michigan law: when an employer responds to reports of coworker harassment in a way that "reasonably serve[s] to prevent future harassment of the plaintiff," the employer is not liable. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 919 (Mich. 2000). IT-Works's actions after learning of Roer's comments insulate the employers from liability.

*Retaliation.* Kean's remaining claims concern IT-Works's decision to fire her. She claims that the firing was motivated by her complaints about Roer's comments nearly three months earlier. To show retaliation under Title VII or Michigan law, Kean must show that (1) she engaged in protected activity; (2) her employers knew she did so; (3) she experienced an adverse employment action; and (4) the adverse employment action was causally connected to the protected activity, which is to say the protected activity was "a significant factor" motivating the employment action. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999); *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. App. 2001).

Kean cannot satisfy the fourth element. Her only evidence of causation is that the discharge came roughly two-and-a-half months after the complaint. Although "there may be circumstances where evidence of temporal proximity alone would be sufficient to support" an inference of causation, those circumstances do not exist here. *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000). In *Nguyen*, for example, we held that a one-month gap between a complaint and allegedly retaliatory conduct could not, without more, support a causal inference. *Id.* at 565–67. Kean faces a steeper (and insurmountable) hill here, as the gap in time was two and a half times longer.

Besides the absence of any evidence of retaliation, there is affirmative evidence that conditions improved for Kean after the complaint. Far from punishing Kean after she threatened to file a sexual harassment complaint about Roer, IT-Works rewarded her with an improved evaluation and a substantial pay increase. Intervening favorable actions of an employer may not be a complete

bar to recovery, *cf. Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 711 (6th Cir. 2007), but they assuredly weigh against a claim of retaliation.

Two other issues remain. Kean argues that the district court should have overlooked her inability to remember the details of Roer's comments during her deposition because the parties agreed to continue her deposition on another day but then cancelled it. On that second day, Kean claims, her attorney would have helped her to "clarify[] the record," presumably with material she could not remember the first time. Br. at 44. Yet Kean has only herself to blame for the omission. Rather than waiting for a second deposition, she could have placed any newly remembered details in her affidavit. *See* Fed. R. Civ. P. 56(c).

Kean also argues that the district court should have sanctioned the defendants for failing to turn over the correct employment manual until midway through the discovery period. Br. at 22–23. But Kean never moved for sanctions on this ground, as required by Rule 37(c)(1) of the Federal Rules of Civil Procedure. Even if she had, the district court found that sanctions would have been inappropriate because the defendants willingly shared the employment manual during the discovery period. That determination was not an abuse of discretion. *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 525 (6th Cir. 2005).

Finally, because the district court properly granted summary judgment—given the employers' reasonable response to Kean's complaints, her lack of evidence demonstrating the severity of the comments and the absence of any proof of retaliatory motive—we need not reach HC-5's separate

argument that it lacked notice of the harassment.  For like reasons, we need not decide whether Roer

was an employee or an independent contractor, or whether HC-5 actually qualified as an "employer"

under the applicable statutes.

III.

For these reasons, we affirm.