*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SUZANNE D. KOCAK,

　　　　　*Plaintiff-Appellant,*

　　　*v.*

COMMUNITY HEALTH PARTNERS OF OHIO, INC.,

　　　　　*Defendant-Appellee.*

No. 03-4650

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-02027—Patricia A. Gaughan, District Judge.

Argued: December 1, 2004

Decided and Filed: March 11, 2005

Before: SILER, SUTTON, and FARRIS, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Douglas L. Winston, BERGER & ZAVESKY, Cleveland, Ohio, for Appellant. Linda C. Ashar, WICKENS, HERZER, PANZA, COOK & BATISTA, Avon, Ohio, for Appellee. **ON BRIEF:** Douglas L. Winston, BERGER & ZAVESKY, Cleveland, Ohio, for Appellant. Linda C. Ashar, Thomas J. Stefanik, Jr., WICKENS, HERZER, PANZA, COOK & BATISTA, Avon, Ohio, for Appellee.

---

## OPINION

---

　　　FARRIS, Circuit Judge. Whether one is or is not pregnant at the time does not control whether one can allege discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), or section 4112 of the Ohio Revised Code. We nevertheless affirm the decision to enter summary judgment against Plaintiff Suzanne D. Kocak.

---

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

# I.

## *BACKGROUND*

The following facts are not in dispute: Kocak resigned from her position as an obstetric nurse at Defendant Community Health Partners of Ohio, Inc. by letter dated January 22, 1999. Pregnancy complications motivated her resignation. She delivered her child in March of 1999. She applied for a part-time nurse position with Community Health in January of 2000. She was not hired and did not file a charge of discrimination either with the Equal Employment Opportunity Commission or the Ohio Civil Rights Commission. She reapplied for a position as a part-time nurse in May of 2001. Her co-workers voiced vehement opposition to her rehiring, stating that they found her difficult to work with, unreliable, and not a "team worker." Kocak was not hired.

Certain disputed conversations and events in 2001 formed the basis of a charge of discrimination with the EEOC and OCRC in September 2001. In her deposition, Kocak testified that on June 4, 2001, Elizabeth Finnegan, a personnel manager at Community Health, asked Kocak whether she was pregnant or intended to have more children. Kocak also testified that Finnegan told her at an unspecified time thereafter that Melanie Meyer, Kocak's former supervisor, would not rehire her because of the complications in scheduling caused by her past pregnancy.

On the basis of these 2001 events, Kocak filed a charge of discrimination with the EEOC and OCRC in September 2001, which states that the alleged discriminatory action – failure to hire – occurred in June 2001. Kocak received a right to sue letter from the OCRC on July 16, 2002, and this lawsuit followed.

# II.

## *STANDARD OF REVIEW*

We review the district court's entry of summary judgment de novo, *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004), and will affirm if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" as to an essential element of the non-moving party's case. *Id.* (citing Fed. R. Civ. P. 56(c)). "Genuine" issues are those which could persuade a reasonable person to return a verdict for the non-moving party. *Id.*

# III.

## *DISCUSSION*

1.    *The PDA Claim*

Congress amended Title VII in 1978 to add the PDA, which reads in relevant part:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k). "[I]n using the broad phrase 'women affected by pregnancy, childbirth and [sic] related medical conditions,' the [PDA] makes clear that its protection extends *to the whole range of matters concerning the childbearing process*." H.R. Rep. 95-948, 1978 U.S.C.C.A.N. 4749, 4753 (emphasis added).

We understand that Kocak claims to have offered direct evidence of discrimination – in fact, she proceeds solely on a theory of direct evidence. We have held that a plaintiff states a PDA claim if she offers direct evidence that, in treating a plaintiff adversely, the defendant was motivated by discriminatory animus. *See Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996). Even direct evidence of discrimination is irrelevant, however, unless the alleged discrimination is because of sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'") (emphasis and alteration in original). Discrimination "because of sex," under the PDA, must be "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The threshold question, therefore, is whether Kocak qualified for protection under the PDA at the time of her application for a nursing position in May 2001.[1]

Defendant contends that Kocak is not protected by the PDA because she was not pregnant at the time of Community Health's decision not to rehire her in 2001. In support of its argument, Defendant seizes on *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000), wherein we announced the prima facie test for a claim under the PDA when a plaintiff chooses to proceed by circumstantial evidence: that "(1) *she was pregnant*, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* at 658 (emphasis supplied).

Kocak was not pregnant at the time of her 2001 application; she did not bear any children during the period of her application (in fact, she had not done so for approximately two years); and no medical conditions related to pregnancy manifested themselves during the time of her application. The district court concluded from these facts that Kocak was not protected by the PDA at the time that Community Health did not hire her.

This was error. The Supreme Court has held that the PDA prohibits an employer from discriminating against a woman "because of her capacity to become pregnant." *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991); *see also Walsh v. Nat'l Computer Sys.*, 332 F.3d 1150, 1160 (8th Cir. 2003) ("[Plaintiff] asserts that she was discriminated against . . . because she is a woman who had been pregnant, had taken a maternity leave, and might become pregnant again. 'Potential pregnancy . . . is a medical condition that is sex-related because only women can become pregnant.'") (quoting *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 680 (8th Cir. 1996)). In an analogous context, we have held that an employer violates the PDA if it terminates an employee because the employee is contemplating an abortion. *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996). It stands to reason that if, under the PDA, an employee may not be terminated on the basis of her potential to have an abortion, then Kocak cannot be refused employment on the basis of her potential pregnancy.[2]

---

[1] As noted above, Kocak filed only one charge of discrimination with the EEOC, involving solely the events of May and June 2001. She did not file a similar charge for the events of January 2000. Consequently, she may rely only on the 2001 events to support her federal cause of action. *See Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992) ("[I]f a plaintiff did not first present a claim to the [EEOC], that claim may not be brought before the federal courts on appeal."). The rule for a cause of action under the Ohio analogue to the PDA is the basis for Kocak's last appellate contention and will be discussed *infra* at 9.

[2] We recognize that this conclusion might appear to weaken the first element of our *Cline* test. All that is required to meet that element, however, is that a plaintiff proceeding by circumstantial evidence show that she was pregnant at some point in time (and not necessarily at the time of the adverse employment action complained of). We expressly decline to consider the question of whether a plaintiff who had never before been pregnant could sue under the PDA.

Thus, if Kocak has produced direct evidence that creates a genuine issue of material fact about whether Community Health refused to hire her because she might become pregnant again, her PDA claim survives summary judgment. She has not done so.

"[D]irect evidence is that evidence which, if believed, requires a conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). Once a plaintiff proffers direct evidence of discrimination, "the burden of persuasion shifts to the defendant to show that it would have [refused to hire the plaintiff] had it not been motivated by discrimination." *Id.* The evidence upon which Kocak purports to rely derives exclusively from her own deposition. Of the testimony concerning Community Health's failure to hire her in 2001, only two allegations are conceivably material: (1) that Finnegan told her at some point that Meyer did not want to hire her because of the scheduling difficulties attending her prior pregnancy; and (2) that Finnegan asked her whether she was pregnant or intended on having more children.

The first of these allegations is not direct evidence of discrimination – it does not require a conclusion that unlawful discrimination motivated the decision not to rehire Kocak. There is unrefuted evidence that Kocak was unreliable when it came to scheduling and difficult to contact when she was employed with Community Health, including before she became pregnant. To conclude that the obstetric unit manager's comment about scheduling difficulties relating to her last pregnancy demonstrates an anti-pregnancy animus and not a non-discriminatory concern about Kocak's past scheduling difficulties – difficulties extending further back than the pregnancy – requires an inference. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) ("[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."). Finnegan's statement therefore does not rise to the level of "direct evidence" of discrimination. *See Norbuta v. Loctite Corp.*, 1 Fed. Appx. 305, 313 (6th Cir. 2001) (unpublished table decision) ("Whatever the strength of [the] evidence, it is not 'direct' evidence [if] it admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact."); c*f. Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 382 (6th Cir. 2002) (plaintiff did not present direct evidence of discrimination supporting ADEA claim even when those responsible for refusing to rehire plaintiff admitted that they considered her prior complaints, including age discrimination-related complaints, in their decision).

Even, however, if this statement were deemed "direct evidence" of discrimination, Community Health has offered substantial evidence that it would have decided not to rehire Kocak absent the discriminatory motive. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003). That is, Defendant has produced evidence that it decided not to rehire Kocak because she was an unreliable employee and was avidly disliked by her peers. Kocak has not proffered a single piece of evidence indicating that these reasons are pretextual. To the contrary, portions of her testimony confirm that she was at times difficult to contact and had frequent conflicts with her co-workers.

Kocak is left to argue that when Finnegan asked her whether she was pregnant or intended on having more children, that question is "direct evidence" of discrimination. As inappropriate and unprofessional as it was, however, Finnegan's question, standing alone, cannot support Kocak's claim. In a similar context, we have held that the question, "What? Are you pregnant?" when uttered by the person directly responsible for failing to promote a plaintiff, is insufficient standing by itself to found a claim of discrimination. *Richmond v. Johnson*, No. 96-6329, 1997 WL 809962, at *2 (6th Cir. Dec. 18, 1997) (unpublished table decision). Certain comments can be "too abstract, in addition to being irrelevant and prejudicial, to support a finding of [pregnancy] discrimination." *Chappell v. G.T.E. Prods. Corp.*, 803 F.2d 261, 268 n.2 (6th Cir. 1986). Finnegan's question is not

direct evidence of discrimination because it does not compel a reasonable factfinder to conclude that Kocak was not hired for discriminatory reasons. *Cf. Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (direct evidence of sex discrimination consisted of testimony that defendant stated that he would not promote plaintiff because of her sex and did not want plaintiff to answer the telephone hotline because "women are not mechanically inclined").

In consequence, though Kocak falls within the protection of the PDA, we cannot say that she has raised a genuine issue of material fact with respect to her claim of discrimination under the PDA.

### 2.    *The Ohio State Law Claim*

Kocak also brings a claim pursuant to Ohio Rev. Code Ann. § 4112.01(B), Ohio's analogue to the PDA.[3] "[F]ederal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. § 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

Kocak claims that the district court improperly excluded pre-2001 evidence of pregnancy discrimination. She alleges that the district court erred in holding that only exhausted claims could be raised in an action under R.C. § 4112, and that it should have considered Kocak's year 2000 evidence as a separate claim for pregnancy discrimination. Kocak relies on R.C. § 4112.99, which provides that violations of Ohio's discrimination statute can form the basis of a civil action.

We reject the claim. Kocak's complaint mentions solely the events of 2001 as grounds for her claims under Ohio and federal law. The complaint does not set forth a single allegation of discrimination that pre-dates 2001, let alone aver a separate claim under section 4112.99 for pre-2001 allegations. Since filing with the OCRC generally precludes a subsequent suit under section 4112.99, *see Balent v. Nat'l Revenue Corp.*, 638 N.E.2d 1064, 1066-67 (Ohio App. 1994), and since only the 2001 events are claimed as the basis for the allegation of discrimination, Kocak's claims under the Ohio Civil Rights statute fail. *See Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 431 (6th Cir. 2004).

**AFFIRMED.**

---

[3]R.C. 4112.01(B) provides in relevant part:

 . . . [T]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions . . . .