NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0388n.06
Filed: June 2, 2006

No. 05-5256

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| WILLIAM F. HEGGER, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT FOR THE |
| v. | ) | MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| VISTEON AUTOMOTIVE SYSTEMS, INC. | ) | |
| And FORD MOTOR Co., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: SILER, GRIFFIN, Circuit Judges; COOK, District Judge.[*]

COOK, District Judge. The Plaintiff-Appellant, William F. Hegger, appeals the grant of a summary judgment by the district court in favor of the Defendants-Appellees, Visteon Automotive Systems, et al. On the basis of the record, we affirm the entry of the summary judgment and deny Hegger's appeal.

I.

_____

[*]The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

1

On July 22, 2003, Hegger filed a complaint in the United States District Court for the Middle District of Tennessee, in which he accused his employers, Visteon Automotive Systems, and the Ford Motor Company, as well as his union, United Auto Workers International, of (1) race and age discrimination, (2) racial harassment and hostile work environment, (3) acts of retaliation in the form of disparate measures of discipline, (4) a deliberate failure to hire and/or promote him in violation of existing law, and (5) an undeserved constructive discharge from his employment.[1]

On January 3, 2005, the district court granted Visteon's motion for the entry of a summary judgment after concluding that Hegger had failed to proffer a sufficiency of evidence upon which to support his claims of disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 et seq ("THRA"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 and 623(d) ("ADEA"). The district court also determined that his Title VII discriminatory claims neither occurred within the applicable limitations period nor were supported by any set of facts which would be sufficient to satisfy a judgment under Title VII, the THRA, or the ADEA. This appeal followed.

II.

Hegger, an African American, began his employment with the Ford Motor Company in 1996 at its Glass Plant facility in Nashville, Tennessee. During the course of his employment, he filed two charges of unlawful racially discriminatory conduct by his employers with the Equal Employment Opportunity Commission ("EEOC"); one in 1998 and the other in 2002. When Hegger

---

[1]In 2000, Visteon became a wholly owned subsidiary of the Ford Motor Company. Hegger and other hourly employees of Ford at the time of this corporate realignment were loaned to Visteon.

filed his first EEOC charge in 1998, he detailed a series of incidents between August 26, 1996 and February 7, 1998 which served as the bases for his complaints.[2] Although he was issued a right-to-sue letter by the EEOC, no lawsuit was ever filed by him within the designated statutory framework. In 2002, Hegger filed another charge with the EEOC, contending that his employers had subjected him to unlawful employment decisions on the basis of his race and age.

During the period of time between the filing of these two EEOC charges, Hegger had been disciplined by his employers on three separate occasions for absenteeism. There was also evidence presented to the district court that the human resources personnel department ("HRPD") had received complaints from fellow-employees which indicated that Hegger had exhibited some strange and inappropriate behavioral patterns in and around the workplace. As a consequence, he was (1) placed on paid medical leave in accordance with the collective bargaining agreement and (2) required to undergo a psychological exam. Upon returning to work, Hegger attended a disciplinary hearing, in which he was assessed a thirty day suspension.[3]

### III.

As an appellate court, we must review the entry of a summary judgment by utilizing a *de novo* standard of review. *See Kocak v. Community Health Partners of Ohio*, 400 F.3d 466, 468 (6th Cir. 2005); *Farhat v. Jopke*, 370 F.3d 580, 587-88 (6th Cir. 2004). However, the "summary judgment will be affirmed if 'the pleadings, depositions, answers to interrogatories, and admissions

---

[2]The incidents that were referenced by Hegger in the 1988 EEOC charge included his receipt of, among other things, (1) an unwanted handwritten card from the Ku Klux Klan, and (2) unsolicited sexually explicit jokes from some unidentified co-workers.

[3]Inasmuch as Hegger had already incurred a thirty day paid leave, it was treated as "time served" which enabled him to resume his work immediately.

3

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact' as to an essential element of the non-moving party's case." *Farhat*, 370 F.3d 580, 587 (6th Cir. 2004) (quoting Fed.R.Civ.P. 5©). "An issue of fact is 'genuine' if a reasonable person could return a verdict for the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Finally, "the party bearing the burden of proof must present a jury question as to each element of its case." *Sharma v. Ohio State University*, 25 Fed. App'x. 243, 246 (6th Cir. 2001).

Although Hegger timely filed this lawsuit on the basis of his claims arising out of the 2002 EEOC charge, these allegations improperly included incidents that had been a part of the 1998 EEOC charge. As such, we will only review Hegger's disparate discipline claims under Title VII and THRA by utilizing the traditional summary judgment framework.[4]

## IV.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e-2. In 2001, we declared that the "plaintiff in a Title VII case bears the initial burden of proving discrimination by the defendant." *Sharma v. Ohio State University*, 25 Fed. App'x. 243, 246 (6th Cir. 2001). Thus, a Title VII plaintiff may "satisfy this burden by presenting direct evidence of discrimination actions by the defendant or by showing the existence

---

[4]In Hegger's brief, he stated, "[A]ppellant's claims . . . are predicated on [Title VII]. For the purposes of this appeal, William Hegger takes no position on the dismissal of his ADEA and Family Medical Leave Act ("FMLA") claims. [However,] [p]endent jurisdiction for plaintiffs claims under [the THRA] also attaches." Appellant Br. 7. Although not entirely clear from a reading of his brief, it appears that Hegger is only challenging the summary judgment decision by the district court as it relates to his Title VII and THRA claims.

of circumstantial evidence that creates an inference of discrimination." *Id.* at 247.

1. Direct Evidence

In a direct evidence case, the plaintiff must present "direct testimony that the employer acted with a discriminatory motive." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 172 (6th Cir. 2004). Direct evidence requires a conclusion by the fact finder that unlawful discrimination was at least a "motivating factor" for the employer's actions. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114-15 (6th Cir. 1987). If the plaintiff is successful in demonstrating the existence of unlawful discriminatory conduct by the employer, the burden of persuasion shifts to the defendant to show that the challenged employment tenure would have been terminated even if it had not been motivated by discrimination. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999).

In this case, Hegger is unaware of the identity of those persons who, in his judgment, are responsible for the alleged discriminatory conduct at his workplace. Moreover, Hegger has been unable to present any evidence which links the decisions by management to the conduct about which he has complained. Although he contends that the thirty-day suspension for his alleged bizarre behavior was the product of a racial animus, it appears from the record that the employer proffered a facially legitimate business reason for its administrative action. Rather than imposing another thirty day suspension period upon him, the company essentially considered his medical leave as "time served." Contrary to Hegger's position on this issue, it suggests that his employer was accommodating and displayed sensitivity under these circumstances.

Consequently, we conclude that Hegger has failed to establish that (1) an act of unlawful

5

discrimination was at least a motivating factor in his employer's decision to administratively discipline him or (2) the company acted with a discriminatory motive. Accordingly, Hegger has failed to proffer any direct evidence of illegal discriminatory conduct by Visteon.

2.  Circumstantial Evidence

In order to survive the entry of a summary judgment in a Title VII claim through the use of circumstantial evidence, the plaintiff must show that he (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified, and (4) was treated less favorably than a similarly situated employee outside the protected class. *Sharma,* 25 Fed. App'x at 247. "Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant does so, the burden shifts back to the plaintiff to prove the reason advanced is pretextual." *Id.* (citations omitted). Those claims that arise under the THRA "are analyzed under the same framework as those under Title VII." *Rhea v. Dollar Tree Stores, Inc.*, 2005 WL 2600213, at 7 (W.D. Tenn. 2005) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).

As a preliminary matter, Hegger's Title VII allegations are limited to those claims that were asserted by him in his 2002 EEOC charge because he neglected to exercise his right to file a law suit under the 1998 EEOC charge in a timely manner.[5] *See* 42 U.S.C. § 2000e-5(f)(1); *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982). Significantly, Hegger has not argued that his 1998 EEOC charge falls under any of the recognized exceptions to the statute of limitations. Moreover, he does not contend that the allegations within the 2002 EEOC charge constitute a "continuing

---

[5]Although the district court based its summary judgment decision, in part, on this issue, Hegger neither challenged nor addressed this point in his appeal.

6

violation" of the 1998 EEOC charge. *See Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C. Cir. 1982) (to demonstrate continuing violation, plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period").

Accordingly, in light of the facts and circumstances surrounding the 2002 EEOC charge, it is clear that Hegger has not established any viable claim under Title VII. *See Gerlach v. Michigan Bell Telephone Co.*, 501 F. Supp. 1300, 1322 (E.D. Mich. 1980) ("the claims in the judicial complaint must be like or related to the allegations contained in the EEOC charge"). The 2002 EEOC charge contains an assertion that his employer undertook retaliatory measures against him during a six week period (September 1, 2002 and October 20, 2002) on the basis of his race. Hegger's allegation of disparate discipline are legally and factually deficient.

In pursuit of this issue, Hegger submits that "[a]ppellate courts construing Rule 56 standards consistently hold that where, as here, the outcome hinges squarely on state of mind, or intent, or perception, or witness credibility, summary judgment should not be granted." However, he has neglected to proffer *any* evidence which would suggest that his employer acted in a discriminatory manner. Despite having claimed that white co-workers were treated differently from him, he has been unable to identify any white fellow employee who, though similarly situated, was treated differently.

Even if Hegger had satisfied the prima facie requirements of a Title VII violation, he has not asserted any argument that would rebut his employer's nondiscriminatory reasons for the adverse employment action which addressed his absenteeism record, as well as the complaints from fellow-employees about his questionable behavior while in the work place. In fact, Hegger has

7

acknowledged that he did not have his supervisor's permission to leave the plant on any of the three occasions for which he was disciplined. It is our conclusion that the discipline enacted against Hegger was in accord with the progressive policy of the plant for attendance. It is important to note that *de minimis* employment actions are not materially adverse and, thus, they are not actionable. *Ford v. General Motors Corp.,* 305 F.3d 545, 553 (6th Cir. 2002). The imposition of discipline against an employee for absenteeism according to company policy is not a materially adverse employment action. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000) (*de minimis* loss of pay did not rise to level of adverse employment action). Therefore, a review of the facts which surround the relevant events suggests that each action taken by Visteon was warranted.[6]

### A.    Retaliation Claim

In order to establish a prima facie case of unlawful retaliation under Title VII, a plaintiff must demonstrate, by a preponderance of the evidence, that (1) this statute protects the activity in which he was engaged, (2) his employer knew that he was engaged in this protected activity, (3) an employment action, which was adverse to the plaintiff was undertaken by his employer, and (4) there exists a causal connection between the protected activity and the adverse employment action. *Abbot v. Crown Motor Co. Inc.,* 348 F.3d 537, 542 (6th Cir. 2003). Hegger has not offered any evidence which suggests that he was engaged in a protected activity. As a consequence, Hegger's retaliation claim must necessarily fail.

### V.

---

[6]Although Hegger's brief is not clear as to whether he has conceded his hostile environment claim under Title VII, we have concluded that this allegation should fail for the same reasons given above. *See Rhea v. Dollar Tree Stores, Inc.*, 2005 WL 2600213, at 4 (W.D. Tenn. 2005).

8

In noting that Hegger has not set forth any evidence - direct or circumstantial - which satisfies the disparate discipline framework, this Court agrees with the decision by the district court to grant a summary judgment in favor of the employer because we also believe that there are no genuine issues of a material fact to be resolved. Accordingly, and for the reasons that have been set forth above, we affirm the decision of the district court in this litigation.