<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 20a0613n.06

No. 19-2294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>TIMOTHY FINLEY,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE WESTERN DISTRICT OF</td></tr>
<tr><td>MANDI SALMI, Mental Health Nurse Practitioner, et</td><td>)</td><td>MICHIGAN</td></tr>
<tr><td>al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Defendants-Appellees.</td><td>)</td><td></td></tr>
</table>

**FILED**
Oct 29, 2020
DEBORAH S. HUNT, Clerk

O R D E R

Before: STRANCH, THAPAR, and READLER, Circuit Judges.

The panel delivered an order of the court. STRANCH, J. (pp. 5–7), delivered a separate opinion concurring in part and dissenting in part.

Timothy Finley, a Michigan state prisoner, appeals pro se from a district court judgment in two consolidated prisoner civil rights actions filed under 42 U.S.C. § 1983. He has filed a motion for a protective order and to seal and strike certain attachments. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Finley filed a complaint alleging that the noise level in his prison housing unit was so excessive that it caused him to lose sleep and exacerbated his mental illness, causing him to engage in self-harming behavior, including cutting his arms, swallowing razor blade pieces, and taking overdoses of his medication. He filed a second complaint alleging that his Eighth Amendment rights were violated by prison officials' failure to prevent him from harming himself and failure to treat his mental illness properly. The two complaints were consolidated. The defendants moved for summary judgment and Finley responded. A magistrate judge recommended that the motion

be granted. Finley filed objections. The district court overruled the objections and granted summary judgment to the defendants.

On appeal, Finley reasserts his claims from the first complaint against a nurse practitioner and the warden of the Marquette Branch Prison, and his claims from the second complaint against four nurses and four prison officers. Both parties have moved to strike Attachments 2 and 3 from Finley's brief.

This case arose out of events from the end of August 2016 to the end of September 2016. Throughout this period, Finley engaged in self harm, which he attributes to the noise level in his housing unit exacerbating his mental illness. He alleged that defendants failed to protect him from himself and failed to treat his mental illness properly. He also filed a complaint alleging that he should not have been placed in segregation at the end of this period. That complaint was dismissed for failure to state a claim, but this court vacated the dismissal and remanded with leave to amend. *See Finley v. Huss*, 723 F. App'x 294, 299 (6th Cir. 2018).

A summary judgment motion is reviewed de novo, construing the allegations in the light most favorable to the non-moving party, and will be affirmed where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).

An Eighth Amendment violation occurs when prison officials are deliberately indifferent to a prisoner's serious medical needs, including psychological needs. *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001). To establish an Eighth Amendment violation, however, it is insufficient to second guess medical judgments concerning the adequacy of the treatment provided. *See Rouster v. County of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014).

In his first complaint, Finley alleged that the noise levels in his housing unit caused him to engage in self harm. The record documents that he complained about the noise on several occasions. The defendant nurse practitioner, however, stated that he never made that complaint to her and that there was no diagnosed medical need for Finley to be housed in a quiet atmosphere.

The warden noted that there were regulations concerning the noise level that were to be enforced by the corrections officers. He also submitted evidence that an investigation performed in response to Finley's complaints showed that the noise levels in the prison did not exceed acceptable levels. Finley submitted no evidence in support of his allegation that these defendants were deliberately indifferent to his serious psychological need by failing to transfer him to a different housing unit.

In his second complaint, he alleged that corrections officers failed to prevent him from engaging in self harm, and that the officers and nurses did not properly treat his physical injuries or mental illness, in violation of the Eighth Amendment. To establish the first claim, Finley was required to show that the defendants were deliberately indifferent to either his safety or his serious medical needs. That claim requires satisfying both an objective and subjective component. The objective component required Finley to prove a "substantial risk of harm", and the subjective component required him to prove the corrections officers had a "sufficiently culpable state of mind." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Put differently, the officers must have known of a substantial risk of serious harm to Finley and failed to take reasonable steps to abate that risk. *Id.* Defendants do not dispute Finley's self-injurious behaviors amount to a substantial risk of harm, satisfying the objective component. But Finley fails to meet the subjective component.

Finley argued that the corrections officers should have ensured that he did not have access to razor blades. Finley was placed in a clean cell under observation. Yet he nevertheless succeeded in smuggling razor blades into his cell, using them to cut his arms, and later swallowing many of them. Indeed, Finley credited his own resourcefulness, claiming that after he was able to swallow the first razor blade, he was able to obtain three additional razor blades, to cut himself and ultimately swallow. Perhaps, as Finley notes, further safeguards could have been employed, possibly by being placed in restraints to prevent self-harm. But we have already rejected the notion prison officials are deliberately indifferent where they merely place an inmate under observation without, for example, prescribing medications after he engaged in self-harm with razor blades.

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004). Just as the plaintiff in *Edmonds*, Finley would have the court second guess the defendants' judgments. To the extent "a prison official knew of a substantial risk from the very fact that the risk was obvious," officers attempted to address that risk by placing Finley in a clean cell, yet Finley resourcefully succeeded in obtaining razor blades. *Farmer*, 511 U.S. at 842. Finley contends it is sufficient that the officers knew Finley injured himself after being placed in a clean cell. But there is no evidence that the officers traced the source of Finley's injuries to a smuggled razor blade still in Finley's possession. The record before us, at best, demonstrates only that the corrections officers acted negligently with respect to Finley's possession of razor blades, well short of proving deliberate indifference.

In his objections to the magistrate judge's report, Finley argued that the defendants failed to report that he was spitting up blood after he returned from the hospital on September 2 until he was returned to the hospital on September 5. The records from that period, however, showed that Finley was observed sucking blood out of the wounds on his arms and spitting it around his cell on the first three days. On the last day, when he appeared to be actually bleeding from the razor blade piece he had swallowed, he was sent back to the hospital. The medical records reflect that Finley was constantly evaluated, his prescribed medications were adjusted, the cuts to his arms were treated, he was placed under observation, and he was sent to outside hospitals when he reported swallowing razor blade pieces. He did not show that the treatment he received was so woefully inadequate as to amount to no treatment at all. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Accordingly, no genuine dispute of material fact exists that requires vacating the summary judgment award to defendants.

We thus **AFFIRM** the district court's judgment. We **GRANT** the motions to strike the attachments to Finley's brief and for a protective order.

**JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part.**
I concur with the bulk of the majority's conclusions but would find that there remain issues of material fact regarding Finley's Eighth Amendment claim that the correction officers were deliberately indifferent to his possession of razor blades before he swallowed one on September 1, 2016.

To survive summary judgment, Finley needed to demonstrate that there were issues of material fact as to whether prison officials were deliberately indifferent to "a substantial risk of serious harm" to him. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

On August 30, 2016, Finley was placed in a suicide observation cell for threatening to harm himself. Within 15 minutes, Finley had cut himself with a razor blade that he had brought with him. Defendant Tasson observed this and obtained medical attention for Finley, but did not remove the razor blade. The next day, on August 31, 2016, a Qualified Mental Health Professional issued a mental health management plan that placed Finley at a "moderate" risk of self-injury, and advised that he be placed in a "stripped, clean observation cell" and not be permitted to have "razors or potentially sharp objects." But over the course of the next few days, as medical records show, Finley proceeded to repeatedly cut himself. Finley does not, as the majority represents, contend only that various officers knew he had injured himself after being placed in a clean cell.

Rather, he alleges that Defendants Feltner, Sharrett, Schetter, and Tasson (Defendant Officers) observed him in the act of cutting himself with a razor blade but did not take the blade from him.

He does not, as the majority claims, "credit[] his own resourcefulness" in bringing this razor blade into his cell, but explains that he was in the throes of an episodic relapse of his severe mental illness that "compelled" him to harm himself. Finally, on September 1, 2016, Finley swallowed the razor blade, causing him extreme pain and requiring him to be taken to the hospital for treatment twice. Surgeons were unable to remove the razor blade on multiple occasions and it remained lodged in his throat until at least September 26, 2016.

Taken together, this evidence, including Finley's own allegations, is sufficient to create an issue of material fact regarding whether the Defendant Officers could have and did draw the inference that the razor blades Finley possessed posed a substantial risk of serious harm to him. Yet nothing in the record indicates that the officers took any action in response, such as attempting to identify, locate and confiscate the device Finley was using to make those cuts, beyond one provider's note that Finley "would not elaborate on what he is using to afflict injury." And even though Finley was initially placed in a clean cell, he has stated that the correction officers subsequently observed him using razor blades in that clean cell. A reasonable juror could infer that ignoring those later observations, particularly in light of Finley's history of self-harm and the mental health management plan in place, constituted deliberate indifference.

Although Defendants moved for summary judgment on their qualified immunity defense, the district court denied that motion as moot, having found no underlying constitutional violation. So that issue has not been briefed on appeal. On this record, I would vacate the district court's judgment as to Finley's claim against Feltner, Sharrett, Schetter, and Tasson based on their alleged

failure to confiscate the first razor blade that Finley used for self-harm from August 31, 2016 until he swallowed it, and remand for further consideration. I therefore respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk